OPINION.
{¶ 1} Plaintiffs-appellants, SST Bearing Corporation, SST Castings, Inc., and SST Chain, Inc. ("SST"), appeal the judgment of the Hamilton County Court of Common Pleas granting the motion to stay proceedings filed by defendants-appellees, MTD Consumer Group, Inc., MTD Products, Inc., Patricia Mack, and Linda Stephenson (collectively, "MTD"). For the following reasons, we reverse the trial court's judgment and remand the cause for further proceedings.
 The Parties' Contractual Relationship {¶ 2} This appeal arises from a lawsuit in which SST claimed that MTD had misappropriated trade secrets and had failed to fulfill certain contractual obligations. The issue is whether the trial court properly stayed the proceedings pending arbitration.
 {¶ 3} SST is a company based in Loveland, Ohio, that imports and distributes a number of industrial products, including bearings, castings, and chains. MTD is a Cleveland-area company that manufactures lawn mowers, tractors, and other lawn-care equipment. According to SST's complaint, Mack and Stephenson were MTD employees responsible for the procurement of industrial parts.
 {¶ 4} For over ten years, SST and MTD had maintained a steady business relationship in which SST would procure specialized goods for MTD from overseas suppliers. During their relationship, the parties entered into more than 900 contracts for such goods.
 {¶ 5} The transactions would typically begin with MTD requesting a price quotation from SST for a specific product. After SST located the product from a supplier, SST would provide a detailed written price quotation to MTD.
 {¶ 6} The quotations would typically include a description of the goods and quantity, price, and delivery terms, as well as a time period during which the price would be held. Each of the quotations that SST sent to MTD stated, "THIS ACCEPTANCE IS CONDITIONED EXPRESSLY ON BUYER'S ASSENT THAT ANY OTHER TERMS AND CONDITIONS SHALL HAVE NO FORCE OR EFFECT AND SHALL NOT CONSTITUTE ANY PART OF THE AGREEMENT BETWEEN SELLER AND BUYER."
 {¶ 7} MTD would then respond with a purchase order for the goods. Many times, MTD would verbally tell SST to ship the goods and would send a written purchase order after shipment. The written purchase orders included the following: "SELLER'S COMMENCEMENT OF WORK WILL CONSTITUTE SELLER'S ACCEPTANCE OF ALL TERMS AND CONDITIONS AS SET FORTH IN DOCUMENT 990014.1 MTD PRODUCTS INC., PRODUCTION PART/MRO PURCHASE ORDER TERMS AND CONDITIONS WHICH ARE INCORPORATED HEREIN BY REFERENCE. ACCEPTANCE IS LIMITED TO SUCH TERMS AND CONDITIONS."
 {¶ 8} Document 990014.1, as cited in the purchase order, included a clause that the parties agreed to submit any disputes to arbitration. The uncontroverted evidence submitted to the trial court indicated that Document 990014.1 itself was rarely included with the purchase orders.
 Standard of Review {¶ 9} In a single assignment of error, SST now argues that the trial court erred in granting the motion for a stay pending arbitration.
 {¶ 10} In staying the litigation pending arbitration, the trial court applied common-law principles in holding that the arbitration clause included in MTD's purchase orders became part of the parties' agreements. But the parties agree that R.C.1302.10, Ohio's version of Uniform Commercial Code Section 2-207, governs their contractual relationship.
 {¶ 11} Whether a controversy is arbitrable under a contract is a question of law.[1] Therefore, we decide the issue of arbitrability de novo.[2]
 {¶ 12} In the case at bar, we hold that the trial court's decision was erroneous. Despite the uncontroverted applicability of R.C. 1302.10, the trial court relied largely on common-law principles in holding that the arbitration clause had become part of the contracts. The proper application of R.C. 1302.10, though, mandates a contrary result.
 Offer and Acceptance Under R.C. 1302.10 {¶ 13} To apply the rules of acceptance contained in R.C.1302.10, we must first determine whether it was SST or MTD that made the "offers" in the case at bar. SST argues that its price quotations were "offers" within the meaning of R.C. 1302.10, and that MTD's purchase orders were acceptances of those offers. MTD contends that the price quotations were mere solicitations for offers, and that its own purchase orders constituted offers that SST accepted — with the inclusion of the arbitration clause — by shipping the goods and otherwise consummating the transactions.
 {¶ 14} In determining the parties' intent under R.C. Chapter 1302, where the contract "involves repeated occasions for performance by either party * * *, any course of performance accepted or acquiesced in without objection shall be relevant to determine the meaning of the agreement."[3]
 {¶ 15} We agree with SST's position that its price quotations constituted offers. Although a price quotation is generally construed as an invitation for an offer, it may be deemed an offer to form a binding contract if it is sufficiently detailed, and if it appears from the terms of the quotation that all that is needed to ripen the offer into a contract is the recipient's assent.[4]
 {¶ 16} In this case, the terms of SST's quotations were such that only MTD's assent was necessary to form a binding contract. The quotations included a description of the goods and quantity, price, delivery terms, as well as a time period during which the price would be held. In construing an SST price quotation virtually identical to those in the instant case, a federal court concluded that the quotations were offers because they contained specific terms, they identified custom goods, and they were sent in response to specific negotiations by the parties.[5] We find the reasoning in the federal case to be equally applicable here.
 {¶ 17} Moreover, the parties' course of performance established that MTD's consent was all that was needed for the quotations to ripen into a contract. The evidence before the trial court was that, on numerous occasions, SST would ship the goods as the result of a telephone call from MTD in which MTD would assent to the terms of the quotations. On these occasions, MTD would often not send a purchase order until weeks after SST had shipped the goods. Thus, even though the price quotations were referred to as an "acceptance" in certain portions of the quotations themselves, we hold that the quotations were offers under R.C. 1302.10.
 {¶ 18} Having held that SST's price quotations constituted "offers," we must now determine whether MTD's acceptance of those offers was conditioned upon the inclusion of the arbitration clause. R.C. 1302.10(A) provides that "[a] definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms."
 {¶ 19} MTD argues that its acceptance of SST's offers was expressly made conditional on SST's assent to the additional terms, including the arbitration provision. MTD cites language in each purchase order stating that "SELLER'S COMMENCEMENT OF WORK WILL CONSTITUTE SELLER'S ACCEPTANCE OF ALL TERMS AND CONDITIONS AS SET FORTH IN DOCUMENT 990014.1," and that "ACCEPTANCE IS LIMITED TO SUCH TERMS AND CONDITIONS." SST argues that the language in the purchase orders was insufficient to make the acceptance conditional on the added terms.
 {¶ 20} Although there is a relative dearth of Ohio law on the topic of conditional acceptance under R.C. 1302.10, the seminal Sixth Circuit case of Dorton v. Collins Aikman Corp.[6]
provides a thorough discussion of what language is required in an acceptance to render it conditional on added or different terms. As the Dorton court stated, "it is not enough that an acceptance is expressly conditional on additional or different terms; rather an acceptance must be expressly conditional on the offeror's assent to those terms"[7]
 {¶ 21} Applying that rule, the Dorton court held that the use of the language "subject to all of the terms and conditions on the face and reverse side hereof, including arbitration, all of which are accepted by buyer" was insufficient to render an acceptance conditional on the added terms.[8] The court emphasized that, to be a conditional acceptance, the language must "clearly [reveal] that the offeree is unwilling to proceed with the transaction unless he is assured of the offeror's assent to the additional or different terms therein."[9]
 {¶ 22} MTD, though, cites a decision from the Eastern District of Pennsylvania, Hendrickson v. National RailroadPassenger Corp.,[10] for the proposition that general limiting language renders an acceptance conditional. InHendrickson, the purchase order stated that "such acceptance is limited to the express terms contained in this Purchase Order."[11] The court, without comment, held that the acceptance was conditioned on the additional terms of the purchase order based on that language.
 {¶ 23} We find the holding in Dorton to be more cogent than that of Hendrickson. Whereas the Dorton court's holding gives full effect to the statutory language requiring a conditional acceptance to be expressly conditioned on the offeror's assent to the different or additional terms, the holding in Hendrickson
would seemingly permit virtually any limiting language to render an acceptance conditional. We therefore decline to follow theHendrickson holding.
 {¶ 24} Applying the Dorton rule to the instant case, we hold that the language of the purchase order did not render MTD's acceptance conditional on the added terms. Here, the purchase order merely stated that the acceptance was "limited to" the added terms and did not state that SST's assent to the added terms was necessary for the contract to be formed. The purchase orders certainly did not expressly state that MTD would have been unwilling to go forward with the transactions unless SST assented to the additional terms. The purchase orders' language therefore did not make acceptance conditional on the inclusion of the arbitration clause.
 {¶ 25} Moreover, the parties' course of performance militated against MTD's position. As we have already noted, MTD often accepted SST's offers by telephone and would not send a purchase order until a considerable time after shipment. There is no indication in the record that MTD ever mentioned the arbitration clause or other conditions of acceptance in its verbal assent to SST's offers. On the contrary, MTD's willingness to go forward with transactions based upon the terms of SST's offers indicated that its acceptance of the offers was unconditional. The evidence thus fails to support MTD's assertion that it had accepted SST's offers conditioned upon SST's assent to additional terms.
 Acceptance with the Proposal of Additional Terms {¶ 26} MTD further argues that even if it had unconditionally accepted SST's offers, the added terms in the purchase orders, including the arbitration provision, became part of the parties' agreements as proposals for additions to the contract. SST contends that the added terms were not part of the agreements under R.C. 1302.10.
 {¶ 27} R.C. 1302.10(B) provides that "additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless: (1) the offer expressly limits acceptance to the terms of the offer; (2) they materially alter it; or (3) notification or objection to them has already been given or is given within a reasonable time after notice of them is received." SST and MTD agree that they are "merchants" within the meaning of this section.
 {¶ 28} We agree with SST that the added terms were not made part of the contracts under R.C. 1302.10(B)(1), because SST had expressly limited acceptance to the terms of each offer. Each of the price quotations that SST sent to MTD stated that the offer was "CONDITIONED EXPRESSLY ON BUYER'S ASSENT THAT ANY OTHER TERMS AND CONDITIONS SHALL HAVE NO FORCE OR EFFECT AND SHALL NOT CONSTITUTE ANY PART OF THE AGREEMENT BETWEEN SELLER AND BUYER." In Aramac Supply Co. v. LeBlond Makino Machine ToolCo.,[12] this court held that substantially similar language precluded the offeree's additional terms from becoming part of the contract under R.C. 1302.10(B)(1). That holding controls in the case at bar.
 {¶ 29} We are also persuaded by SST's argument that the arbitration clause would have materially altered the contract within the meaning of R.C. 1302.10(B)(2). A "material alteration" is one that would "result in surprise or hardship if incorporated without express awareness by the other party."[13] As theDorton court held, the question of whether a term materially alters the contract rests on the facts of each case.[14]
 {¶ 30} In the case at bar, SST demonstrated that the inclusion of the arbitration clause would result in surprise and hardship. In the vast majority of its purchase orders, MTD merely referred to Document 990014.1 and did not include the document itself. Document 990041.1 was a nine-page document, with the arbitration provision appearing on page eight. Moreover, there was no indication that MTD ever referred to the arbitration provision when it orally assented to SST's offers. We accordingly hold that the inclusion of the arbitration provision would have resulted in surprise to SST.
 {¶ 31} As for hardship, the arbitration provision required SST to forego its right to a jury trial on a potentially complex and wide-ranging lawsuit and to submit to arbitration in the Cleveland metropolitan area. Under these circumstances, we hold that the arbitration provision constituted a material alteration of the parties' contracts and therefore did not become a part of the contracts under R.C. 1302.10(B)(2).
 {¶ 32} Finally, SST argues that the trial court erred in failing to rule on its motion for a preliminary injunction pending arbitration. Our holding with respect to the arbitration provision has rendered this argument moot, and we express no opinion on the merits of any other form of injunctive relief that SST may seek following remand.
 Conclusion {¶ 33} SST's assignment of error is sustained. The trial court's judgment staying the proceedings pending arbitration is reversed, and the cause is remanded for further proceedings consistent with this Opinion and law.
Judgment accordingly.
Doan, P.J., and Painter, J., concur.
[1] Dunkelman v. Cincinnati Bengals, Inc., (Dec. 3, 2004), 1st Dist. No. C-040427, at ¶ 20, Vanyo v. Clear ChannelWorldwide, 156 Ohio App.3d 706, 2004-Ohio-1793, 808 N.E.2d 482, at ¶ 8.
[2] Dunkelman, supra.
[3] R.C. 1302.11(A).
[4] See Dyno Construction Co. v. McWane (C.A.6, 1999),198 F.3d 567, 572.
[5] SST Castings v. Amana Appliances, Inc. (2003), S.D.Ohio No. 1:02-CV-00592.
[6] (C.A.6, 1972), 453 F.2d 1161.
[7] Id. at 1168 (emphasis in original).
[8] Id. at 1167.
[9] Id. at 1168. Accord Luria Bros. Co. v. Pielet Bros.Scrap Iron Metal, Inc., (C.A.7, 1979), 600 F.2d 103; AirMaster Sales Co. v. Northridge Park Co-Op., Inc. (D.N.J. 1990),748 F.Supp. 1110; Dare Plastics, Inc. v. Steel City Corp. (Aug. 4, 1975), 7th Dist. No. 74 C.A. 89.
[10] (E.D.Pa. 2002) 47 U.C.C. Rep. Serv.2d (Callaghan) 1284.
[11] Id.
[12] (Dec. 5, 1984), 1st Dist. No. C-840136.
[13] R.C. 1302.10, Official Comment 4; Aceros Prefabricados,S.A. v. Tradearbed, Inc. (C.A.2, 2002), 282 F.3d 92, 100.
[14] Dorton, supra, at 1169.